Lalli Venkatakrishnan (Cal. Bar # 323747)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: 510-676-0438
Fax: 510-844-7150
Email: lvenkat@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity and Center for Environmental Health*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW R. WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Defendant. | Civ. No.<br><br>**COMPLAINT**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et seq*) |

**INTRODUCTION**

1. This action is brought under the federal Clean Air Act, 42 U.S.C. §§ 7401 – 7671q, and seeks to compel the Administrator of the United States Environmental Protection Agency ("EPA") to carry out his outstanding legal obligations to: (1) promulgate a Federal Implementation Plan ("FIP") addressing a permitting rule for the Mendocino County Air Quality Management District; (2) take final action on 51 state implementation plan elements submitted by the state of California to implement the 2008 8-hour ozone NAAQS for the Eastern Kern (Kern County) nonattainment area; (3) take final action on the Rule No. 428 (New Source Review Requirements for New and Modified Major Sources in Federally Designated Nonattainment Areas) submitted by the state of California to meet the moderate nonattainment requirements under the 2008 8-hour ozone NAAQS for the Northern Sierra Air Quality Management District; and (4) take final action on 7 state implementation plan elements submitted by the state of Colorado to implement the 2008 8-hour ozone NAAQS for the Denver Metro/North Front Range nonattainment area.

2. Ozone air pollution has profound effects on human health. EPA has found that short and long-term exposure to ozone can result in "enhanced respiratory symptoms in asthmatic individuals, school absences, and premature mortality." 73 Fed. Reg. 16,436, 16,440 (Mar. 27, 2008). Individuals particularly sensitive to ozone exposure include older adults, people with heart and lung disease, people who work and exercise outdoors, and children. *See* 78 Fed. Reg. 3086, 3088 (Jan. 15, 2013); 62 Fed. Reg. 38,653, 38,668 (July 18, 1997); 73 Fed. Reg. 16,436, 16,440 (Mar. 27, 2008).

3. EPA also found that some plant species are especially sensitive to ozone pollution, which stunts growth, interferes with photosynthesis, and increases susceptibility to disease, weather, and insects. These negative impacts have a damaging effect on the surrounding ecosystem, including loss of biodiversity, habitat degradation, and water, nutrient, and carbon cycling. Studies link long-term ozone exposure to adverse health effects in birds such inflammation, ruptured blood vessels, lung failure, decreases in egg production and hatching,

1

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

brood abandonment, and reduced growth.[1]

4. Accordingly, Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH bring this action against Defendant ANDREW R. WHEELER, in his official capacity as Administrator for the EPA, to compel him to perform his mandatory duties to ensure health and public welfare protections promised under the Clean Air Act.

## JURISDICTION

5. This case is a Clean Air Act "citizen suit." Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suits).

6. An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 of 1146, and does not involve the Tariff Act of 1930.

7. Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. §§ 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## NOTICE

8. Plaintiffs mailed by certified mail, return receipt requested, written notice of intent to sue regarding Claims 1 - 3 of this Complaint. EPA received the notice letter regarding these claims in this Complaint on or about November 21, 2019.

9. Plaintiffs subsequently mailed by certified mail, return receipt requested, written notice of intent to sue regarding Claim 2 of this Complaint. EPA received the notice letter regarding this violation in this Complaint on or about January 30, 2020.

10. Plaintiffs subsequently mailed by certified mail, return receipt requested, written

---

[1] Olivia V. Sanderfoot and Tracey Holloway, *Air Pollution Impacts on Avian Species via Inhalation Exposure and Associated Outcomes*, 12 Environ. Res. Lett. 083002 (2017), available at https://iopscience.iop.org/article/10.1088/1748-9326/aa8051/pdf.

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

notice of intent to sue regarding Claim 1 - 3 of this Complaint.  EPA received the notice letter regarding these violations in this Complaint on or about February 24, 2020.

11. Plaintiffs subsequently mailed by certified mail, return receipt requested, written notice of intent to sue regarding Claim 4 (2008 8-hour ozone NAAQS for Denver Metro/North Front Range nonattainment area, Colorado) of this Complaint.  EPA received the notice letter regarding this violation in this complaint on or about April 2, 2020.

12. More than sixty days have passed since EPA received the notice letters discussed above. EPA has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists between the parties.

**VENUE**

13. Defendant EPA resides in this judicial district. This civil action is brought against an officer of the United States acting in his official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. Some of the claims in this Complaint concerns EPA's failure to perform mandatory duties with regard to California. EPA Region 9, which is responsible for California, is headquartered in San Francisco. Thus, events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco. Additionally, Plaintiff CENTER FOR ENVIRONMENTAL HEALTH is headquartered in Oakland. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

**INTRADISTRICT ASSIGNMENT**

14. A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco. Accordingly, assignment to the Oakland or San Francisco Division is proper pursuant to Civil L.R. 3-2(c) and (d).

**PARTIES**

15. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation incorporated in California. The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environmental are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

16. Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is an Oakland, California based non-profit organization that helps protect the public from toxic chemicals and promotes business products and practices that are safe for public health and the environment. The Center for Environmental Health works in pursuit of a world in which all people live, work, learn and play in health environments.

17. Plaintiffs' members live, work, recreate, travel and engage in activities throughout the areas at issue in this Complaint and will continue to do so on a regular basis. Pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members. Pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected area.

18. EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection, opportunities, and information that they are entitled to under the Clean Air Act. Furthermore, EPA's failure to perform its mandatory duties also creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

19. Defendant ANDREW R. WHEELER is sued in his official capacity as the Administrator of the EPA. In that role, EPA has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

20. The above injuries will continue until the Court grants the relief requested herein.

**STATUTORY FRAMEWORK**

21. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring the air we breathe through the

4

Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356.

22. Commensurate with this goal, Congress authorized the Administrator of the United States Environmental Protection Agency to establish National Ambient Air Quality Standards ("NAAQS") for "criteria pollutants," which are air pollutants that "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7408(a)(1)(A).

23. There are primary and secondary NAAQS. *Id*. § 7409(a)(1)(A). Primary NAAQS provide for "an adequate margin of safety…to protect the public health," while secondary NAAQS "protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutants in the ambient air." *Id*. § 7409(b)(1)-(2).

24. After promulgating a new or revised NAAQS, EPA determines whether geographic areas are designated nonattainment (areas that do not meet the primary or secondary NAAQS), attainment (areas that meet the primary or secondary NAAQS), or unclassifiable (areas that cannot be classified based on available information). *Id*. § 7407(d)(1)(A).

25. States are required to submit State Implementation Plans ("SIPs") and plan revisions that "provide for the implementation, maintenance, and enforcement" of any NAAQS. *Id*. § 7410(a)(1).

26. Within six months of a state submitting a SIP, EPA must make a completeness finding. If a determination is not made within six months of submittal, the plan submission is deemed administratively complete by operation of law. *Id*. § 7410(k)(1)(B).

27. EPA is required to take final action to approve, disapprove, or provide a conditional approval or disapproval within twelve months of a SIP submittal being administratively complete. *Id*. § 7410(k)(2)-(4).

28. Within two years of EPA finding that a state failed to submit a required SIP or disapproval of a SIP submittal, EPA must promulgate a Federal Implementation Plan. *Id*. § 7410(c).

# FACTUAL BACKGROUND

### A. Mendocino County Air Quality Management District: 2008 8-hour Ozone NAAQS

29. On July 3, 2017, EPA published a final rule, issuing a limited approval and limited disapproval of Mendocino County Air Quality Management District's revised Rule 1-220 for preconstruction review and permitting under the 2008 8-hour ozone NAAQS. 82 Fed. Reg. 30, 770 (July 3, 2017).

30. EPA issued a limited disapproval because Mendocino County Air Quality Management District's Rule 1-220 conflicted with the Clean Air Act's requirement for prevention of significant deterioration of air quality in areas designated "attainment" or "unclassifiable" for pollutants regulated under the National Ambient Air Quality Standards.

31. EPA's limited disapproval of Rule l-220 became effective on August 2, 2017. *Id.*

32. As a result, EPA was required to promulgate a FIP no later than August 2, 2019, unless the state of California submits and EPA approves a revised SIP, correcting the deficiencies, before it is required to promulgate a new source review FIP. 42 U.S.C. §7410(c)(1).

33. To date, EPA has neither approved a revised SIP nor published a FIP addressing the disapproval of revised Rule 1-220 for the Mendocino County Air Quality Management District.

### B. Eastern Kern (Kern County), California: 2008 8-hour Ozone NAAQS

34. On December 11, 2017, EPA issued a finding of failure to submit a SIP addressing most of the requirements for the 2008 ozone NAAQS for the Eastern Kern (Kern County) nonattainment area ("Eastern Kern nonattainment area"). 82 Fed. Reg. 58, 118 (Dec. 11, 2017).

35. The state of California subsequently submitted SIPs addressing 51 nonattainment SIP elements for the 2008 ozone NAAQS for the Eastern Kern nonattainment area.

36. EPA has a mandatory duty to take final action on SIP submittals within twelve months of those SIP submittals becoming administratively complete. 42 U.S.C. § 7410(k)(2)-(4).

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

37. It has been more than 12 months since the nonattainment SIP elements in Table 1 were deemed or found administratively complete.

38. To date, EPA has not taken final action to approve, disapprove, or conditionally approve these nonattainment SIP elements for the Eastern Kern nonattainment area listed in Table 1 below.

**TABLE 1**

| Element | SIP Requirement | Submittal Date | Completion Date (no later than) | Final Action Due Date |
|---|---|---|---|---|
| 1 | Contingency Measures Volatile Organic Compounds ("VOC") and Nitrogen Oxides ("NOx") | 10/25/17 | 4/25/2018 | 4/25/2019 |
| 2 | Emission Inventory | 10/25/2017 | 4/25/2018 | 4/25/2019 |
| 3 | Emission Statement | 10/25/2017 | 4/25/2018 | 4/25/2019 |
| 4 | Nonattainment NSR rules - Serious | 5/23/2018 | 8/28/2018 | 8/28/2019 |
| 5 | Ozone Attainment Demonstration | 10/25/2017 | 4/25/2018 | 4/25/2019 |
| 6 | Available Control Technology ("RACT") Non-Control Technique Guidelines ("CTG") Volatile Organic Compound ("VOC") for Major Sources | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 7 | RACT VOC CTG Aerospace | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 8 | RACT VOC CTG Auto and Light-Duty Truck Assembly Coatings (2008) | 8/9/2017 | 2/9/2018 | 2/9/2019 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | | | | |
|---|---|---|---|---|
| 9 | RACT VOC CTG Bulk Gasoline Plants | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 10 | RACT VOC CTG Equipment Leaks from Natural Gas/Gasoline Processing Plants | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 11 | RACT VOC CTG Factory Surface Coating of Flat Wood Paneling | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 12 | RACT VOC CTG Fiberglass Boat Manufacturing Materials (2008) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 13 | RACT VOC CTG Flat Wood Paneling Coatings (2006) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 14 | RACT VOC CTG Flexible Packaging Printing Materials (2006) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 15 | RACT VOC CTG Fugitive Emissions from Synthetic Organic Chemical Polymer and Resin Manufacturing Equipment | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 16 | RACT VOC CTG Graphic Arts - Rotogravure and Flexography | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 17 | RACT VOC CTG Industrial Cleaning Solvents (2006) | 8/9/2017 | 2/9/2018 | 2/9/2019 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | | | | |
|---|---|---|---|---|
| 18 | RACT VOC CTG Large Appliance Coatings (2007) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 19 | RACT VOC CTG Large Petroleum Dry Cleaners | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 20 | RACT VOC CTG Leaks from Gasoline Tank Trucks and Vapor Collection Systems | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 21 | RACT VOC CTG Leaks from Petroleum Refinery Equipment | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 22 | RACT VOC CTG Lithographic Printing Materials and Letterpress Printing Materials (2006) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 23 | RACT VOC CTG Manufacture of High-Density Polyethylene, Polypropylene, and Polystyrene Resins | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 24 | RACT VOC CTG Manufacture of Pneumatic Rubber Tires | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 25 | RACT VOC CTG Manufacture of Synthesized Pharmaceutical Products | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 26 | RACT VOC CTG Metal Furniture Coatings (2007) | 8/9/2017 | 2/9/2018 | 2/9/2019 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | | | | |
|---|---|---|---|---|
| 27 | RACT VOC CTG Miscellaneous Industrial Adhesives (2008) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 28 | RACT VOC CTG Miscellaneous Metal Products Coatings (2008) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 29 | RACT VOC CTG Paper, Film, and Foil Coatings (2007) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 30 | RACT VOC CTG Petroleum Liquid Storage in External Floating Roof Tanks | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 31 | RACT VOC CTG Plastic Parts Coatings (2008) | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 32 | RACT VOC CTG Refinery Vacuum Producing Systems, Wastewater Separators, and Process Unit Turnarounds | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 33 | RACT VOC CTG SOCMI Air Oxidation Processes | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 34 | RACT VOC CTG SOCMI Distillation and Reactor Processes | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 35 | RACT VOC CTG Shipbuilding/repair | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 36 | RACT VOC CTG Solvent Metal Cleaning | 8/9/2017 | 2/9/2018 | 2/9/2019 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | | | | |
|---|---|---|---|---|
| 37 | RACT VOC CTG Stage I Vapor Control Systems - Gasoline Service Stations | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 38 | RACT VOC CTG Storage of Petroleum Liquids in Fixed Roof Tanks | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 39 | RACT VOC CTG Surface Coating for Insulation of Magnet Wire | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 40 | RACT VOC CTG Surface Coating of Automobiles and Light-Duty Trucks | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 41 | RACT VOC CTG Surface Coating of Cans | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 42 | RACT VOC CTG Surface Coating of Coils | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 43 | RACT VOC CTG Surface Coating of Fabrics | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 44 | RACT VOC CTG Surface Coating of Large Appliances | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 45 | RACT VOC CTG Surface Coating of Metal Furniture | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 46 | RACT VOC CTG Surface Coating of Miscellaneous Metal Parts and Products | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 47 | RACT VOC CTG Surface Coating of Paper | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 48 | RACT VOC CTG Tank Truck Gasoline | 8/9/2017 | 2/9/2018 | 2/9/2019 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | | | | |
|---|---|---|---|---|
| | Loading Terminals | | | |
| 49 | RACT VOC CTG Use of Cutback Asphalt | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 50 | RACT VOC CTG Wood Furniture | 8/9/2017 | 2/9/2018 | 2/9/2019 |
| 51 | Reasonable Further Progress ("RFP") Volatile Organic Compound ("VOC") and Nitrogen Oxide ("NOx") Moderate | 10/25/2017 | 04/25/2018 | 04/25/2019 |

.

**C.     Northern Sierra Air Quality Management District, California: 2008 8-hour Ozone NAAQS**

39.     On September 6, 2016, the state of California submitted a SIP revising Northern Sierra Air Quality Management District's New Source Review regulations to meet the moderate nonattainment requirements under the 2008 8-hour ozone NAAQS.

40.     EPA determined that the state of California's submission of Rule No. 428 (New Source Review Requirements for New and Modified Sources in Federally Designated Nonattainment Areas) met the minimum criteria for completeness on September 28, 2016. In any event, the Rule No. 428 submittal would have been deemed complete by no later than March 6, 2017.

41.     EPA has a mandatory duty to take final action on SIP submittals within twelve months of those SIP submittals becoming administratively complete. 42 U.S.C. § 7410(k)(2)-(4).

42.     On February 19, 2020, the California Air Resource Commission submitted a revised Rule 428 to EPA for approval into the California SIP, and claimed to "withdraw" its September 6, 2016 submittal of the prior version of the rule. The February 19, 2020 update of the September 6, 2016 submittal does not change the due date for EPA's final action.

12

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

43. To date, EPA has not taken final action to approve, disapprove, or conditionally approve this SIP submittal.

**D.    Denver Metro/North Front Range nonattainment area, Colorado: 2008 8-hour Ozone NAAQS**

44. On July 3, 2018, EPA issued a final rule regarding SIP revisions for the 2008 ozone NAAQS for the Denver Metro/North Front Range nonattainment area. 83 Fed. Reg. 31, 068 (July 3, 2018). The final rule approved the majority of the SIP submittal except for Regulation No. 7, Section XVI. D-XIX. *Id*. At 31, 070-71.

45. The state of Colorado subsequently submitted SIPs addressing 7 nonattainment SIP elements for the 2008 Ozone NAAQS for the Denver Metro/North Front Range nonattainment area.

46. It has been more than 12 months since the nonattainment SIP elements in Table 2 were deemed or found administratively complete.

47. To date, EPA has not taken final action to approve, disapprove, or conditionally approve these nonattainment SIP elements for the Denver Metro/North Front Range nonattainment area listed in Table 2 below.

**TABLE 2**

| SIP Elements | Submittal Date | Completion Date (no later than) | Final Action Due Date |
|---|---|---|---|
| Reasonably Achievable Control Technology ("RACT") Volatile Organic Compound ("VOC") Control Technique Guideline ("CTG") Metal Furniture Coatings (2007) | 5/31/2017 | 11/30/2017 | 11/30/2018 |

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | | | |
|---|---|---|---|
| RACT VOC CTG Miscellaneous Metal Products Coatings (2008) | 5/31/2017 | 11/30/2017 | 11/30/2018 |
| RACT VOC CTG Wood Furniture Manufacturing Operations (1996) | 5/31/2017 | 11/30/2017 | 11/30/2018 |
| RACT VOC CTG Industrial Cleaning Solvents (2006) | 5/31/2017 | 11/30/2017 | 11/30/2018 |
| RACT VOC CTG Aerospace (1997) | 5/31/2017 | 11/30/2017 | 11/30/2018 |
| Reg. No. 7, Section X (Use of Cleaning Solvents) | 5/31/2017 | 11/30/2017 | 11/30/2018 |
| Reg. No. 7, Section XIX (Control of Emissions from Specific Major Sources of VOC and/or NOx in the 8-Hour Ozone Control Area) | 5/31/2017 | 11/30/2017 | 11/30/2018 |

## CLAIMS FOR RELIEF

## FIRST CLAIM

**(Failure to promulgate a FIP for part of Mendocino County's New Source Review Program)**

48.   Plaintiffs incorporate by reference all paragraphs listed above.

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

49. It has been more than two years since the effective date of EPA's final rule, issuing a limited disapproval of Mendocino County Air Quality Management District's revised Rule 1-220 for preconstruction review and permitting. 82 Fed. Reg. 30, 770.

50. EPA has not promulgated a FIP to address the basis for its disapproval of revised Rule 1-220 and has not approved a SIP addressing the basis for that disapproval.

51. Accordingly, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(C)(1) with regard to revised Rule 1-220.

## SECOND CLAIM

**(Failure to take final action on the 2008 8-hour ozone SIP submittals for the Kern County nonattainment area, California)**

52. Plaintiffs incorporate by reference all paragraphs listed above.

53. It has been more than twelve months since the 2008 8-hour ozone NAAQS SIP elements for the Kern County, California 2008 ozone NAAQS nonattainment area listed in Table 1 were administratively complete.

54. EPA has not taken final action to approve, disapprove, or conditionally approve the 2008 8-hour ozone NAAQS SIP elements for the Kern County, California 2008 ozone NAAQS nonattainment area listed in Table 1.

55. Accordingly, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(k)(2)-(4) to take final action on the 2008 8-hour ozone NAAQS SIP elements for the Kern County, California 2008 ozone NAAQS nonattainment area listed in Table 1.

## THIRD CLAIM

**(Failure to take final action on the 2008 8-hour ozone SIP submittals for the Northern Sierra Air Quality Management District, California)**

56. Plaintiffs incorporate by reference all paragraphs listed above.

57. It has been more than twelve months since the Rule No. 428 SIP submittal for the Northern Sierra Air Quality Management District's New Source Review regulations to meet the moderate nonattainment requirements under the 2008 ozone NAAQS.

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

58. EPA has not taken final action to approve, disapprove, or conditionally approve the Rule No. 428 SIP submittal.

59. Accordingly, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(k)(2)-(4) to take final action on the Rule No. 428 SIP submittal for the Northern Sierra Air Quality Management District.

## FOURTH CLAIM

**(Failure to take final action on the 2008 8-hour ozone SIP submittals for the Denver Metro/North Front Range nonattainment area, Colorado)**

60. Plaintiffs incorporate by reference all paragraphs listed above.

61. It has been more than twelve months since the 2008 8-hour ozone NAAQS SIP elements for the Denver Metro/North Front Range nonattainment area listed in Table 2 were administratively complete.

62. EPA has not taken final action to approve, disapprove, or conditionally approve the 2008 8-hour ozone NAAQS SIP elements for the Denver Metro/North Front Range nonattainment area listed in Table 2.

63. Accordingly, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(k)(2)-(4) to take final action on the 2008 8-hour ozone NAAQS SIP elements for the Denver Metro/North Front Range nonattainment area listed in Table 2.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

64. Declare that EPA is in violation of the Clean Air Act with regard to its nondiscretionary duty to perform each mandatory duty listed above;

65. Issue a mandatory injunction requiring EPA to perform its mandatory duties by certain dates;

66. Retain jurisdiction of this matter for purposes of enforcing the Court's order;

67. Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert fees; and

16

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

68. Grant such other relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Dated: August 27, 2020

Respectfully submitted,

*/s/*Lalli Venkatakrishnan
Lalli Venkatakrishnan (Cal. Bar # 323747)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 676-0348
Email: lvenkat@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity and Center for Environmental Health*